UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

———————————————————— x

MAIROBY HERNANDEZ, Individually, and
On Behalf of All Others Similarly Situated,

       Plaintiff,

   vs.

ME & MY BIG IDEAS, LLC,

       Defendant.

———————————————————— x

Civil Action No.:

CLASS ACTION COMPLAINT FOR
VIOLATIONS OF THE AMERICANS WITH
DISABILITIES ACT OF 1990 AND NEW
YORK CITY HUMAN RIGHTS LAW

DEMAND FOR JURY TRIAL

1

Plaintiff Mairoby Hernandez ("Plaintiff") brings this class action on an individual basis, and on behalf of all others similarly situated, for declaratory relief, injunctive relief, and compensatory damages—including statutory and punitive damages—against defendant Me & My Big Ideas, LLC ("Defendant"), and alleges upon information and belief, personal knowledge of the Plaintiff, and the investigation of counsel, the following:

## NATURE OF THE ACTION

1.      Plaintiff is a visually impaired and legally blind person[1] who brings this civil rights class action against Defendant for its failure to design, construct, maintain, and operate its website to be fully accessible to—and independently usable by—Plaintiff and other blind or visually impaired people who use screen-reading software.  Plaintiff asserts this action individually and on behalf of all other visually impaired and/or legally blind individuals in the United States who have attempted to access Defendant's website and have been denied access to the equal enjoyment of the goods offered on the website during the past three years from the date of the filing of the complaint (the "Class" and "Class Period").

2.      On June 21, 2022, October 5, 2022, and October 13, 2022, Plaintiff browsed and attempted to transact business on Defendant's website, thehappyplanner.com ("website" or "Defendant's website"). Plaintiff's sister is an incredibly organized person and Plaintiff wanted to gift her sister with something she would enjoy.  As a result, Plaintiff found Defendant's website which offers charming customizable planners. Specifically, Plaintiff was interested in purchasing the 2023 Butterflies & Blooms Happy Planner - Classic Horizontal Layout - 12 Months. This

---

[1] Plaintiff uses the terms "blind" or "visually impaired" to refer to all people with visual impairments who meet the legal definition of blindness; namely, a visual acuity with correction of less than or equal to 20 x 200.  Some individuals who meet the definition of the term "legally blind" have limited vision, while others have no vision at all.

2

planner includes features for daily organization, by providing spaces to "note important plans, add stickers, and boost the users productivity." The option of a seemingly charming planner with butterflies and blooms to aid her sister's organization appeared to the perfect gift, which Plaintiff hopes to be able to provide her sister.

3.       June 21, 2022, October 5, 2022, and October 13, 2022, Defendant's website was inaccessible to Plaintiff. Not only this but, Defendant's website remains inaccessible to Plaintiff and to those who are visually impaired and or legally blind. Despite Plaintiff's continued inability to complete a purchase, Plaintiff's desire to purchase 2023 Butterflies & Blooms Happy Planner - Classic Horizontal Layout - 12 Months, remains. In fact, as soon as the barriers on Defendant's website are cured, Plaintiff intends to complete her purchase. Again, this is due to the charming nature of the planner that the Defendant provides.

4.       The Defendant's website has the following accessibility barriers that are preventing Plaintiff, and all other visually impaired and or legally blind individuals, from making a purchase there:

(a)       The Website is not properly coded to alert the Plaintiff when a product has been added to the cart function. This prevents Plaintiff from being able to complete her purchase. As Plaintiff is unable to ascertain when she can check out, Plaintiff is prevented from completing a purchase as a sighted New York customer would.

(b)       The Website does not provide a text equivalent for many non-text elements, such as images on the webpage. Plaintiff and other blind customers cannot see pictures, logos, or icons and therefore an alternative text is read aloud using synthesized speech. Sighted individuals can see the image. Unfortunately, Defendant's website contains many images that lack alt-text, including the customizable planner, and therefore the screen reader cannot

accurately vocalize descriptions of the images to Plaintiff or other class members. As a result, Plaintiff and other blind customers are unable to determine the details of products on the website and make purchases. Plaintiff is therefore unable to make informed decisions and is prevented from purchasing items as a sighted individual.

(c)     The Website is not properly coded to relay all the information for products on the Website.  Currently, the Website will stop relaying product information in the middle of a line on the Website. As Plaintiff is unable to gain all the product information provided on the Website, she is prevented from making an informed decision as a sighted New York customer would.

(d)     The screen reader fails to read some of the links on the page.  As a result, Plaintiff is unaware what many of the links are for.  Furthermore, the Plaintiff was unable to click on some other links using the screen reader.  This delayed Plaintiff's ability to navigate the website, as she attempted to purchase her desired product.

5.     As a result of these continuing accessibility issues, Defendant, through its website violates Title III of the Americans with Disabilities Act of 1990 ("ADA"), 42 U.S.C. § 12101 *et seq.*, and the New York City Human Rights Law ("NYCHRL"), N.Y.C. Administrative Code §§ 8-101 *et seq.*, as the website is not equally accessible to blind and visually impaired consumers.

6.     Plaintiff and the Class bring this action against Defendant seeking, *inter alia*, a preliminary and permanent injunction, other declaratory relief, statutory damages, actual and punitive damages, pre-judgment and post-judgment interest, and reasonable attorneys' fees and expenses.

**JURISDICTION AND VENUE**

7.     This Court has subject-matter jurisdiction over the Plaintiff's ADA claims pursuant to 28 U.S.C. § 1331.

8.     This Court has supplemental jurisdiction over the Plaintiff's NYCHRL claims pursuant to 28 U.S.C. § 1367.

9.     This Court is empowered to issue declaratory relief under 28 U.S.C. §§ 2201 and 2202.

10.     Venue is proper in this judicial district pursuant to 28 U.S.C. §§ 1391(b)(2) and (c) because: (i) Defendant's unlawful course of conduct occurred in large part in this District; and (ii) Plaintiff attempted to use the website in this District.

11.     Defendant is subject to personal jurisdiction in this District.  Defendant operates and distributes its products throughout the United States, including to consumers and others in this District.  Specifically, the customizable planners, stickers, accessories, office supplies, and craft kits described in paragraph 3, including the 2023 Butterflies & Blooms Happy Planner - Classic Horizontal Layout - 12 Months that is desired by Plaintiff, is available on Defendant's website for delivery in New York.  It was within this District that Plaintiff is being denied the full use and enjoyment of the goods offered on Defendant's website.  As such, it is here that Defendant is committing a substantial part of the acts or omissions that caused injury to Plaintiff and the Class in violation of the ADA and the NYCHRL.

## PARTIES

**Plaintiff**

12.     Plaintiff is a resident of New York, New York.  Plaintiff is a blind, visually impaired, handicapped person and a member of a protected class of individuals as defined under 42 U.S.C. § 12102(1)-(2) – and the regulations implementing the ADA set forth at 28 CFR §§ 36.101 *et seq.* – and as defined under the NYCHRL.

**Defendant**

13.     Defendant is a Limited Liability Company registered in Delaware. Defendant conducts business in New York through its website, which is a place of public accommodation as defined under 42 U.S.C. § 12181(7).

## SUBSTANTIVE ALLEGATIONS

**The Internet, which is an integral part of modern society, may only be accessed by visually impaired individuals through screen-readers.**

14.     For sighted, blind, and visually impaired persons alike, the Internet has become a critical source of information and an invaluable tool for shopping, conducting business, entertainment, and countless other activities.   Per a study by the MIT Technology Review published in 2018, the average American spends 23.6 hours of every week online.  According to studies cited by CNBC, as of 2018, Americans spent 234 million hours shopping online during the average workday.  Thus, in today's tech-savvy, instantaneous world of online commerce, blind and visually impaired people must have the ability to access websites so that they too can enjoy the same convenience and savings that online shopping provides to sighted New Yorkers.  The technology that aides blind and visually impaired Internet users to do this is known as screen-reading software. In short, this software vocalizes the visual information found on a website so that blind and visually impaired can understand it.

15.     The Covid-19 Pandemic has made how critical the Internet is for everyday living. At the start of the pandemic, companies across the nation were forced to shut down physical locations. Nonetheless, many major life activities were able to continue on throughout this time, albeit virtually, – this included schooling, court room procedures, the selling of products and or services, and much more. This need to move online caused a major uptick in the use of the Internet. According to Pew Research, in 2021 three out of ten American adults are almost constantly online,

6

up from approximately two in ten in 2015.  This increase in overall use by Americans is causing a massive shift in how consumers make purchases. The financial firm UBS is projecting that, by 2026, e-commerce sales will account for 25% of all sales (up from 18% in 2021) and that up to 50,000 physical retail stores will close.

16.     In 2017, the Centers for Disease Control ("CDC") estimated that the blind population in the United States reached approximately 1.7 million.  The American Foundation for the Blind's website states that the 2019 American Community Survey (conducted by the U.S. Census Bureau) identified an estimated 388,524 New Yorkers with vision difficulty.

17.     To ensure that blind and visually impaired individuals are able to use computers and devices, several screen-reading software programs have been created for them.  Some of these programs are available for purchase and other machines have built-in integrated software. NonVisual Desktop Access, otherwise known as "NVDA" is currently one of the most popular screen-reading software programs available.

18.     NVDA has many features for those who are blind and visually impaired and the software supports many popular applications including Firefox, Google Chrome, Microsoft Word, email applications, and music players. The built-in speech synthesizer within NVDA dictates text on a screen in over 50 languages. When a website is properly coded, blind and visually impaired individuals are able to use NVDA and other screen-readers to navigate a website and make purchases there like sighted individual can.

**A company's website must accommodate the use of screen readers**

19.     NVDA, and other screen-reading programs like it, can only read the code that a website provides. As a result, if a website is not properly designed and coded, the screen-reader will not be able to relay information on the website to the user of the screen-reader. Without such coding, blind and visually impaired users cannot navigate a website on their own.

20.      The international website standards organization, the World Wide Web Consortium, known universally as W3C, has published an updated version (version 2.1) of the Web Content Accessibility Guidelines ("WCAG").   WCAG 2.1 is a set of well-established guidelines promulgated to ensure that websites are accessible to blind and visually impaired people.   Non-compliant websites usually contain numerous common access barriers that prevent the blind and visually impaired from enjoying the Internet in the same way sighted individuals do.

**Defendant's website discriminates against the visually impaired by containing access barriers.**

21.      Defendant is a retail company that offers various customizable planners and other office gear, which includes 2023 Butterflies & Blooms Happy Planner - Classic Horizontal Layout - 12 Months that Plaintiff desires. Defendant offers these products on its Website so that, *inter alia*, the general public throughout the nation, including in New York, can transact business on it.

22.      Plaintiff is visually impaired and/or legally blind.  Plaintiff uses the NVDA screen-reader to access websites on the Internet.  As described above, during Plaintiff's repeated visits to Defendant's website—the first occurring on June 21, 2022, the second time occurring on October 5, 2022, and most recently on October 13, 2022—Plaintiff encountered the access barriers set forth in paragraph 5 above that denied Plaintiff full and equal access to Defendant's website and the items sold there.  These access barriers were the reason that Plaintiff has been repeatedly denied the opportunity to purchase 2023 Butterflies & Blooms Happy Planner - Classic Horizontal Layout - 12 Months and other products available on the website.

23.      Plaintiff still wants to purchase the Butterflies & Blooms Happy Planner - Classic Horizontal Layout - 12 Months for reasons previously stated in paragraph 2 and 3. Plaintiff unequivocally intends to return to the website to complete the desired purchase as soon as the accessibility barriers are cured.

24.     However, currently, it is Defendant's policy and practice to deny Plaintiff and the Class access to its website and to deny them the ability to purchase the charming customizable planners, stickers, accessories, office supplies, and craft kits offered there to the general public. Due to Defendant's failure and refusal to remove access barriers to its website, Plaintiff and the Class have been—and currently are being—denied equal access to the website and the customizable planners, stickers, accessories, office supplies, and craft kits offered thereon.

25.     As Defendant's website is available through the Internet, and thus available around the clock from any Internet-connected device, Plaintiff may easily return to the website and purchase the charming customizable disc-bound planner systems, sticker books, and accessories once the barriers to accessibility are removed. Plaintiff awaits the correction of the accessibility barriers, so that her desired purchase may be completed.

**Defendant must remove the website's accessibility barriers**

26.     The access barriers Plaintiff encountered have caused a denial of Plaintiff's full and equal access on June 21, 2022, October 5, 2022, and October 13, 2022.  This denial deterred Plaintiff in the past, and continues to deter Plaintiff presently, from completing a purchase on the website until such access barriers are cured.  If the website were equally accessible to all, as required under the ADA, Plaintiff and the Class could independently navigate the website and complete a desired transaction as sighted individuals do.

27.     As Plaintiff has been repeatedly denied the ability to make a purchase on Defendant's website, Plaintiff has actual knowledge of the access barriers that make Defendant's website inaccessible and not independently unusable by blind and visually impaired people.  This denial of access to the customizable planners, stickers, accessories, office supplies, and craft kits offered on Defendant's website demonstrates that Defendant is engaging in acts of intentional discrimination.  Especially because simple compliance with the WCAG 2.1 Guidelines would

provide Plaintiff and the Class equal access to the website.  Currently, Plaintiff alleges, without limitation, that Defendant is engaging in the following acts of intentional discrimination:

(a)  constructing and maintaining a website that is inaccessible to visually impaired individuals, including Plaintiff and the Class;

(b)  failing to construct and maintain a website that is sufficiently intuitive so as to be equally accessible to visually impaired individuals, including Plaintiff and the Class; and

(c)  failing to take actions to correct these access barriers in the face of substantial harm and discrimination to blind and visually impaired consumers (a protected class), including Plaintiff and the Class.

28.  Defendant uses standards, criteria or methods of administration that have the effect of discriminating or perpetuating the discrimination of others, as alleged herein.  To correct Defendant's current inaccessibility, Defendant must retain a qualified consultant acceptable to Plaintiff to assist Defendant in complying with WCAG 2.1 guidelines. This is necessary as Defendant lacks a corporate policy or a current qualified individual to aid in this realm, as shown through the current inaccessibility of their website.  Defendant must cooperate with the agreed upon consultant to:

(a)  train its employees and agents who develop the website on accessibility compliance under the WCAG 2.1 guidelines;

(b)  regularly check the accessibility of the website under the WCAG 2.1 guidelines;

(c)  regularly test user accessibility by blind or vision-impaired persons to ensure that Defendant's website complies under the WCAG 2.1 guidelines; and

(d)   develop an accessibility policy (clearly posted on its website(s)) with contact information for users to report accessibility-related problems.

29.    If the website were accessible, Plaintiff and the Class would be able to independently purchase customizable planners, stickers, accessories, office supplies, and craft kits Defendant sells there, as every sighted individual can. Defendant has, upon information and belief, invested substantial sums in developing and maintaining its website and has generated significant revenue thereon.  The revenues procured by Defendant far exceed the associated cost of making the website equally accessible to visually impaired consumers.

## CLASS ACTION ALLEGATIONS

30.    Plaintiff brings this action as a nationwide class action pursuant to Rules 23(a) and (b)(2) of the Federal Rules of Civil Procedure ("Fed. R. Civ. P."), both individually and on behalf of the Class.  Plaintiff also seeks certification of a sub-class of all visually impaired and/or legally blind individuals in the City of New York who have attempted to access Defendant's website and have been denied access to the equal enjoyment of the goods offered on the website during the Class Period (the "NYC Sub-Class").[2]

Excluded from the Class are Defendant, any entity in which Defendant has a controlling interest, and the officers, directors, affiliates, legal representatives, heirs, successors, subsidiaries, and/or assigns of any such individual or entity.

31.    Upon information and belief, there are hundreds of members in the Class who have suffered from Defendant's conduct complained of herein during the Class Period.  Accordingly, joinder is impracticable pursuant to Fed. R. Civ. P. Rule 23(a)(1).

---

[2] The Class and NYC Sub-Class are hereinafter identified, collectively, as "the Class," unless otherwise stated.

Common issues of fact or law predominate over individual issues within the meaning of Fed. R. Civ. P. Rule 23(a)(2).  Common issues of law and fact include, but are not limited to, whether:

        (a)    the website is a place of "public accommodation" under the ADA;

        (b)    the website is a "place or provider of public accommodation" under the NYCHRL; and

        (c)    the website denies the full and equal enjoyment of its products, services, facilities, privileges, advantages, or accommodations to people with visual disabilities, violating the ADA and/or NYCHRL;

32.    Plaintiff's interests are typical of, and not antagonistic to the interests of, the Class and the claims arising out of Defendant's common uniform course of conduct are all based upon the same facts and legal theories.

33.    Plaintiff will fairly and adequately protect the interests of the Class.  Plaintiff has retained competent counsel experienced with class actions and civil rights litigation who intend to vigorously prosecute this action.  Plaintiff has similar legal bases for statutory and punitive damages that are sought on behalf of members of the Class in this action.  Class certification of the claims is appropriate under Fed. R. Civ. P. 23(b)(2) because Defendant has acted or refused to act on grounds generally applicable to the Class, making appropriate both declaratory and injunctive relief with respect to Plaintiff and the Class as a whole.

34.    Alternatively, class certification is appropriate under Fed. R. Civ. P. 23(b)(3).  A class action is superior to other available methods for the fair and efficient adjudication of this controversy since a multiplicity of actions could result in an unwarranted burden on the court system and could create the possibility of inconsistent judgments.  Moreover, a class action will

allow redress for many persons whose claims would otherwise be too small to litigate individually. There will be no difficulty in the management of this action as a class action.

35.     Class members' identities can be identified by Defendant's records.  Plaintiff reserves the right to amend the definition of the Class at any point of the litigation, especially after being provided the opportunity to review the documents and records produced in discovery.

**COUNT I**

**Against Defendant for Violations of the ADA, 42 U.S.C. §§ 12101 *et seq.*, on behalf of Plaintiff and the Class**

36.      Plaintiff incorporates by reference the preceding allegations as though fully set forth herein.

37.     Section 302(a) of Title III of the ADA, 42 U.S.C. § 12101 *et seq.*, provides:

No individual shall be discriminated against on the basis of disability in the full and equal enjoyment of the goods, services, facilities, privileges, advantages, or accommodations of any place of public accommodation by any person who owns, leases (or leases to), or operates a place of public accommodation.

42 U.S.C. § 12182(a).

38.     Defendant's website is a place of public accommodation within the definition of 42 U.S.C. § 12181(7).  The website is a service that is offered to the general public, and as such, must be equally accessible to all potential consumers.

39.     Under 42 U.S.C. § 12182(b)(1)(A)(i), it is unlawful discrimination to deny individuals with disabilities the opportunity to participate in – or benefit from – the products, services, facilities, privileges, advantages, or accommodations of an entity.

40.     Under 42 U.S.C. § 12182(b)(1)(A)(ii), it is unlawful discrimination to deny individuals with disabilities an opportunity to participate in or benefit from the products, services, facilities, privileges, advantages, or accommodation, which is equal to the opportunities afforded to other individuals.

41.     Under 42 U.S.C. § 12182(b)(2)(A)(ii)-(iii), unlawful discrimination also includes, among other things:

> "failure to make reasonable modifications in policies, practices, or procedures, when such modifications are necessary to afford such goods, services, facilities, privileges, advantages, or accommodations to individuals with disabilities . . . and a failure to take such steps as may be necessary to ensure that no individual with a disability is excluded . . . ."

42.     Plaintiff is a member of a protected class of persons who has a physical disability that substantially limits the major life activity of sight within the meaning of 42 U.S.C. §§ 12102(1)(A)-(2)(A).

43.     Furthermore, Plaintiff has been denied full and equal access to the website, has not been provided goods that are provided to other patrons who are not disabled, and has been provided goods that are inferior to the services provided to non-disabled persons.

44.     Defendant has failed to take any prompt and equitable steps to remedy its discriminatory conduct.  These violations are ongoing.

## COUNT II

**Against Defendant for Violations of the New York City Human Rights Law, N.Y.C. Administrative Code §§ 8-101 *et seq.*, on behalf of Plaintiff and the NYC Sub-Class**

45.     Plaintiff incorporates by reference the preceding allegations as though fully set forth herein.

46.     N.Y.C. Administrative Code § 8-107(4)(a) provides that:

> "It shall be an unlawful discriminatory practice for any person, being the owner, franchisor, franchisee, lessor, lessee, proprietor, manager, superintendent, agent or employee of any place or provider of public accommodation, because of . . . disability . . . directly or indirectly, to refuse, withhold from or deny to such person, the full and equal enjoyment on equal terms and conditions, of any of the accommodations, advantages, facilities or privileges of the place or provide of public accommodation."

14

47.     Defendant's website is a "sales establishment" and "public accommodation" within the definition of N.Y.C. Admin. Code § 8-102(9).  Defendant owns and operates its website, making it a "person" within the meaning of N.Y.C. Admin. Code § 8-102(1).

48.     By maintaining a website with accessibility barriers, Defendant violates N.Y.C. Administrative Code § 8-107(4)(a).  This inaccessibility denies blind patrons full and equal access to the facilities, products, and services that Defendant makes available to the non-disabled public.

49.     Under N.Y.C. Admin. Code § 8-107(15)(a), Defendant is required to:

"make reasonable accommodation to the needs of persons with disabilities . . . it is an unlawful discriminatory practice for any person prohibited by the provisions of [§ 8-107 *et seq.*] from discriminating on the basis of disability not to provide a reasonable accommodation to enable a person with a disability to . . . enjoy the right or rights in question provided that the disability is known or should have been known by the covered entity."

50.     Defendant's actions constitute willful intentional discrimination against the Sub-Class on the basis of a disability in violation of the N.Y.C. Administrative Code § 8-107(4)(a) and § 8-107(15)(a) in that Defendant has constructed and maintained a website with accessibility barriers and failed to take action to fix the access barriers.  These violations are ongoing.

51.     As such, under § 8-107(4)(a) and/or its implementing regulations, Defendant discriminates, and will continue in the future to discriminate, against Plaintiff and the NYC Sub-Class.  Unless the Court enjoins Defendant from continuing to engage in these unlawful practices, Plaintiff and the NYC Sub-Class will continue to suffer irreparable harm.  Plaintiff is also entitled to compensatory damages, as well as civil penalties and fines under §§ 8-120(8) and 8-126(a) for each offense, as well as punitive damages pursuant to § 8-502.

## COUNT III

### Against Defendant for Declaratory Relief, on behalf of Plaintiff and the Class

52.     Plaintiff incorporates by reference the preceding allegations as though fully set forth herein.

53.     Defendant's website contains access barriers denying blind customers full and equal access to the products.  The website violates 42 U.S.C. §§ 12182, *et seq.*, and N.Y.C. Admin. Code § 8-107, *et seq.*, which prohibit discrimination against the blind.

54.     A judicial declaration is, therefore, necessary, and appropriate.

### PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff demands a judgment:

(a)     awarding Plaintiff statutory money damages, actual damages, and punitive damages, including pre-judgment and post-judgment interest;

(b)     granting a preliminary and permanent injunction requiring Defendant to take all the steps necessary to make its website fully comply with the requirements set forth in the ADA and NYCHRL;

(c)     providing a declaration that Defendant owns, maintains and/or operates its website in a manner that discriminates against the blind and visually impaired;

(d)     certifying the Class and the NYC Sub-Class under Fed. R. Civ. P. 23(a) & (b)(2) and/or (b)(3), appointing Plaintiff as class representative, and Plaintiff's attorneys as class counsel;

(e)     awarding attorneys' fees and costs, and other relief; and

(f)     awarding such other relief as this Court deems just and proper.

## JURY DEMAND

Plaintiff demands a trial by jury.


DATED:  November 10, 2022                    **MIZRAHI KROUB LLP**

Edward Y. Kroub
Daniela Mendes
225 Broadway, 39th Floor
New York, NY  10007
Telephone:  212/595-6200
212/595-9700 (fax)
ekroub@mizrahikroub.com
dmendes@mizrahikroub.com

*Attorneys for Plaintiff*